846 So.2d 282 (2003)
William F. RILEY, Appellant,
v.
Susan D. RILEY, Appellee.
No. 2002-CA-00049-COA.
Court of Appeals of Mississippi.
March 11, 2003.
Rehearing Denied May 27, 2003.
*283 Lawrence Primeaux, Meridian, attorney for appellant.
Robert D. Jones, Robert James Bresnahan, Meridian, attorneys for appellee.
Before THOMAS, P.J., IRVING and MYERS, JJ.
IRVING, J., for the court.
¶ 1. The Chancery Court of Lauderdale County granted William F. Riley and Susan D. Riley a divorce on the grounds of irreconcilable differences. The parties could not agree on the propriety of an *284 award of alimony, COBRA health insurance coverage and attorney's fees and agreed to allow the chancellor to resolve these issues. William, feeling aggrieved by the decision of the chancellor on these issues, has appealed and assigns as error the following:
1. Whether the chancellor erred in awarding Susan an excessive amount of alimony.
2. Whether the chancellor was manifestly in error in the award of alimony in failing to take into account the equitable division, in which Susan received more than seventy percent of the marital estate.
3. Whether the chancellor was manifestly in error in failing to address the effect on periodic alimony of Susan's receipt of retirement benefits at a future date.
4. Whether the chancellor was manifestly in error in awarding Susan an attorney's fee in this case.
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. William and Susan were married for thirty-three years. Susan was fifty-one years old at the date of the trial. She has completed high school but has no further higher education. Susan has not had full-time employment since 1979. She was employed briefly in 1994 when she worked part-time as a realtor. Her real estate license lapsed in 2000, and she subsequently has chosen not to continue in that field. Susan has not had any employment, part-time or otherwise since 1994, and she currently remains unemployed. The parties stipulated that if Susan does not remarry before age sixty, she will be entitled to social security benefits through William.[1]
¶ 4. William was fifty-three years old at the date the trial. He entered the Mississippi National Guard in 1969. William graduated from Mississippi College with a bachelor's degree in business. He is currently employed as an insurance adjuster and grosses $5,359.85 per month. After deductions for federal income taxes, social security and medicare, his net income is $4,001.64. He has additional optional deductions for health and life insurance, retirement, medical reimbursement and the United Way, which reduce his net to $3,594.45. His total monthly living expenses of $3,932.42 include the $1,400 that he was paying in temporary alimony.
¶ 5. William appears to be in good health and offers no testimony of any impediment to his full-time employment. Susan suffers from anxiety and takes a prescription medication to treat it; she also has some problems with her right eye. William provided the health insurance for the family during the marriage.
¶ 6. In the consent to their irreconcilable differences divorce, William and Susan divided the marital estate and agreed that the division was equitable. The agreement provides as follows:

Susan's share
1. Ownership of William's Great River 401(k) account in the sum amount of $54,307.48;
2. One-half of William's USF & G retirement fund which has an estimated monthly value of $524.55 when she reaches sixty-five years of age;
3. Exclusive use, ownership, and possession of the household goods, furniture, furnishings and personal *285 property of the parties except a rice-carved bedroom suite which is to be given to William when the parties' minor daughter ceases using it.
4. $79,000 from the sale of the marital domicile (the sale occurred prior to the parties' separation);
5. $3,600 which was left in a joint bank account at the time of the parties' separation, and
6. A 1992 Mitsubishi Eclipse automobile;

William's share
1. Exclusive use, ownership, and possession of all of his military retirement proceeds (when he reaches age sixty-five, the monthly benefit amount will be $952);
2. One-half of his USF & G retirement fund which has an estimated monthly value of $524.55 when he reaches sixty-five years of age;
2. $64,000 from the sale of the marital domicile (the sale occurred prior to the parties' separation); and
3. A 1999 Nissan Pathfinder.
¶ 7. The parties also agreed that William would (1) pay child support in the amount of $559 per month, (2) maintain an insurance policy on his life in the amount of $100,000 with their minor daughter named as the beneficiary, and (3) maintain insurance coverage of the car being used by the parties' minor daughter. The parties further agreed that William will pay seventy-five percent and Susan twenty-five percent of their minor daughter's health-care-related expenses which are either not covered by insurance or are in excess of insurance coverage.
¶ 8. As previously noted, the parties agreed that the court would determine three issues: whether Susan should be awarded alimony, whether William should be responsible for paying the COBRA insurance premiums for Susan's medical coverage, and whether Susan should be awarded attorney's fees. At the conclusion of the trial, the chancellor ordered William to pay Susan $1000 per month as permanent alimony. William was also ordered to pay Susan's COBRA insurance coverage for eighteen months at the rate of $306 per month, during which period he was permitted to reduce alimony payments to $850 per month. The divorce judgment allows William the opportunity to discontinue COBRA health insurance coverage if Susan obtains other insurance through employment, making the COBRA coverage unnecessary. Additionally, William was ordered to pay $2,000 toward Susan's attorney's fees which were in the amount of $3,500.

ANALYSIS AND DISCUSSION OF THE ISSUES
1. The Award of Alimony
¶ 9. Three of the issues, which William raises, concern the propriety of the award of alimony; therefore, we will address them together.
¶ 10. An appellate court's scope of review of an alimony award is familiar and well settled. Whether to award alimony and the amount of alimony are within the discretion of the chancellor. Traxler v. Traxler, 730 So.2d 1098, 1103(¶ 30) (Miss. 1998). The chancellor's decision will not be reversed on appeal unless he was manifestly in error in his finding of fact or abused his discretion. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).
¶ 11. In making an award of alimony, the chancellor is required to apply the twelve factors in Armstrong, which are:

*286 1. The income and expenses of each parties;
2. The health and earning capacities of the parties;
3. The need of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
Armstrong, 618 So.2d at 1280.
¶ 12. William concedes that the chancellor did utilize the Armstrong factors, yet he argues that the chancellor's judgment on alimony was an unfair, inequitable, and an unjust result which deprived him of his right to live as normal a life as possible with a reasonable standard of living. William insists that when the alimony award is added to his other monthly living expenses, it forces him into a significant monthly deficit that he can meet only by spending his share of the marital estate or by going deeper into debt. William points to case law which states that it is error for the trial court to impose an alimony requirement that is beyond the obligor's ability to pay. Brooks v. Brooks, 652 So.2d 1113, 1122 (Miss.1995).
¶ 13. The record reveals that the chancellor in the present case did take into account William's ability to pay. Particularly, the chancellor explained:
William will be able to maintain a decent standard of living due to his current income and has potential to make even more money. Susan, on the other hand, will be unable to maintain a decent standard of living without alimony from her husband. Certainly if she were to obtain employment, that income along with the alimony from William would be helpful in maintaining [her] standard [of living].
¶ 14. The supreme court has held that alimony, if allowed, "should be reasonable in amount, commensurate with the wife's accustomed standard of living, minus her own resources, and considering the ability of the husband to pay. As long as the chancellor follows this general standard, the amount of the award is largely within his discretion." Gray v. Gray, 562 So.2d 79, 83 (Miss.1990). If there is substantial evidence in the record to support a chancellor's finding of fact, no matter what contrary evidence there may be, an appellate court will uphold the chancellor. Bower v. Bower, 758 So.2d 405, 412(¶ 31) (Miss. 2000).
¶ 15. At the final hearing, William appeared to be in good health. At that time, his monthly gross income was $5,359.85. His net disposable income was $4,001.64. His total living expenses were $3,932.42. Included in this amount was the $1,400 for alimony and child support pursuant to the trial court's temporary order. As previously noted, the amount of permanent alimony which the court ordered William to pay was only $1,000, not the amount he originally paid in temporary alimony.
¶ 16. The chancellor found the likelihood of Susan accumulating any retirement *287 monies beyond the equitable division to be nil, especially considering her lack of job skills, experience, and her health. Susan's liabilities included an estimated $5,000 in medical costs.
¶ 17. William argues that the alimony award in this case was erroneous in that it failed completely to take into account the equitable division of the marital estate between the parties. William cites to Ferguson v. Ferguson, 639 So.2d 921, 927 (Miss. 1994) and its holding that "all property division, lump sum or periodic alimony payment should be considered together." Id. at 929. "Therefore, where one expands, the other must recede." Id. William also propounds with this argument that Susan received seventy percent of the marital estate.
¶ 18. First, we emphasize that fairness is the prevailing guideline in marital division. Ferguson, 639 So.2d at 929. Here, the parties stipulated to the equitable division of the marital estate; therefore, the division of the marital assets was not a decision made by the chancellor. Consequently, this Court assumes that the parties, having themselves stipulated the division, must have done so in a fair manner.
¶ 19. As previously stated, William alleges that Susan was awarded seventy percent of the martial estate. However, William neglects to give credit for the WR Berkley stock which he retained. We have no way of knowing the value of this stock since the chancellor did not value it. However, it is probably safe to say that William would have had it valued if doing so would have benefitted him.
¶ 20. William also argues that the chancellor failed to make any adjustments to the award of alimony to reflect the increased income Susan will receive from William's retirement accounts when he retires. By failing to make any adjustments to Susan's alimony to accommodate the expected retirement benefits, William argues that the chancellor created an expected combined total monthly benefit to Susan in an amount between $2,300 and $2,700, without taking into account any of the Armstrong factors as they would exist at the time. William contends that the chancellor's failure to do so was error because the chancellor was required to apply Armstrong to all aspects of the alimony award.
¶ 21. Conversely, Susan maintains that the division of retirement benefits was not an issue to be decided by the chancellor because the parties previously consented and agreed to the division and ownership. We agree.
¶ 22. We find that the chancellor took into consideration Susan's need for financial security in regards to her lack of earning capacity, as well as the prior agreement of the parties. We do not find any abuse of discretion in the chancellor's award of alimony to Susan, notwithstanding the equitable division stipulated by the parties. We therefore affirm the chancellor on all of the alimony issues.
2. Attorney's Fees
¶ 23. An award of attorney's fees in divorce cases is largely a matter entrusted to the sound discretion of the trial court; absent abuse of discretion, the chancellor's decision in such matters will generally be upheld. Armstrong, 618 So.2d at 1278. An appellate court is "reluctant to disturb a chancellor's discretionary determination whether ... to award attorney fees and of the amount of [any] award." Geiger v. Geiger, 530 So.2d 185, 187 (Miss.1988). The party seeking attorney's fees is charged with the burden of proving inability to pay. Jones v. Starr, 586 So.2d 788, 792 (Miss.1991). Usually *288 where the party is able to pay his or her own attorney's fees, an award of such fees is inappropriate. Id.
¶ 24. William contends that the chancellor did not find that Susan was unable to pay her attorney's fees; therefore, it was error to make such an award. Johnson v. Johnson, 650 So.2d 1281, 1288 (Miss.1994). However, the chancellor found that Susan was unemployed with no prospect of employment and that the property division amounts received by Susan needed to be preserved for her future security, as she has little or no hope of accumulating additional retirement monies. Considering the totality of the circumstances, the chancellor found it equitable to require William to pay part of Susan's attorney's fees. We agree.
¶ 25. THE JUDGMENT OF THE LAUDERDALE COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. LEE, J. DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, J.
LEE, J., dissenting:
¶ 26. Because I find the chancellor abused her discretion in the award of alimony, I dissent. From the chancellor's opinion, the reader might glean that Susan is an unskilled and otherwise destitute soul without recourse to provide for herself absent her husband's assistance. However, a reading of the facts of this case show that while Susan was not college-educated, she did have a high school diploma and was trained to perform various jobs, as shown by her work history. Susan worked during the marriage at various jobs including employment at banks, an insurance company, a college, a school system and radio stations, among other places. She also was a licensed realtor until she let her license lapse in 2000. A reading of the chancellor's opinion and the majority's affirmance reveals that Susan's prospect for earning her own living is dim, while William has years of financial gain from his future employment. I do not agree with this interpretation of the facts. William was born in 1948, and at best, he has "maxed out" in his work, and his prospects for "going up" are dim. Susan, to the contrary, has nowhere to go but "up." She currently has no income from work, so any employment would be an improvement in her financial situation. The chancellor found that Susan's wage-earning potential is minimal, but no evidence was provided in the record to support that finding. Susan was not under the care of a doctor at the time of trial, the only medicine she regularly took was hormones, and she provided no medical evidence to show that she was unable to work. When William was laid off in 1998, he started a home-based business in claims adjusting, and he taught Susan how to run the business. When he moved to Arizona for new work, he turned the business over to Susan who did nothing to keep it operating, and it died. All indications, including Susan's own testimony, are that Susan was not unable, but was simply unwilling to work. This finding to the contrary constitutes error.
¶ 27. The chancellor also failed to take into account the fact that Susan would be receiving a large share of William's retirement in the future, which could be as much as $1,700 per month. What if the chancellor had awarded Susan $2,500 per month? Would that be too high? Would we have reason to reverse at that amount? Of course we would, just as we should at *289 $1,000 considering William's income and the amount Susan received in the settlement. I find the chancellor's failure to consider Susan's ability to work and her future gain from William's retirement to be an abuse of discretion which resulted in her arrival at an inappropriate alimony award. I would reverse and remand for a proper consideration of a more reasonable amount of alimony, if any at all.
BRIDGES, J., JOINS THIS SEPARATE WRITTEN OPINION.
NOTES
[1] The amount of social security benefits that Susan will receive is contingent upon what age William retires.