IRVING, J.,
for the Court.
¶ 1. The Chancery Court of Adams County granted Maurice Duncan and Kim Duncan a divorce on the ground of irreconcilable differences. The parties could not agree on the division of marital assets, marital debts, and attorney’s fees and agreed to allow the chancellor to resolve these issues. Feeling aggrieved by the chancellor’s ruling on these issues, Maurice appeals and asserts the following issues: (1) the chancellor was manifestly in error by not granting him any property acquired during the marriage, (2) the chancellor failed to consider the correct legal standard in determining if the house was a marital asset, (3) the chancellor was manifestly in error in requiring him to repay money to Kim that was given to him during the marriage, and (4) the chancellor erred in requiring him to pay Kim’s attorney’s fees.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶3. Maurice filed a complaint for divorce, seeking a divorce on the ground of habitual cruel and inhuman treatment. Kim subsequently filed an answer and a counterclaim for divorce. The case eventually came before the Adams County Chancery Court. Kim presented evidence which showed that she was the title owner of the marital home, that the home was purchased before the marriage, and that she paid all the mortgage payments on the home. There was also evidence presented showing that the home was renovated during the course of the marriage. Kim testified that she paid over $12,000 towards the renovations, while Maurice paid approximately $1,000. Kim also testified that she loaned Maurice $3,893.55, which he never repaid. Kim further testified that she lived on a fixed income and was unable to pay her attorney’s fees without undue financial hardship.
*1126 ¶ 4. Maurice testified that he paid one-half of the mortgage payment every month, and he also paid the gas, electric, and cable bills associated with the home. Maurice also testified that he paid around $14,000 towards remodeling the home and contributed to furnishing the home. Maurice further testified that he repaid Kim the entire $3,893.55.
¶ 5. After conflicting testimony by Maurice and Kim as to who paid what for renovations to the marital home, the court decided to recess the proceedings so that the parties could assemble their respective receipts and exchange them with the other side. It was agreed by the parties that itemized receipts, supporting documentation, and any additional evidence would be submitted to the court by affidavits. Kim submitted substantial and credible evidence in the form of a sworn affidavit, cancelled checks, check card purchases, cash receipts, and paid invoices, which verified the amounts she paid for house payments, utilities, building supplies, furnishings, and contractors. Kim also provided documented proof of the personal loans she made to Maurice. The record is absent of any documented proof by Maurice of house payments that he alleged he helped pay. Maurice also failed to provide any documented proof that would have substantiated the amount he alleged he paid towards renovating the home.
¶ 6. When the case eventually came before the court again, the parties announced to the court that they had agreed to dismiss their fault based grounds for divorce and wished to proceed with an irreconcilable differences divorce. The parties then filed their joint motion to strike fault grounds for divorce, to withdraw answer, and strike fault grounds for counterclaim for divorce, which was granted by a court order. As part of their agreement to an irreconcilable differences divorce, Maurice and Kim consented to permit the court to decide issues which they could not agree on. Specifically, the court was asked to decide the following issues: (1) whether the house titled to Kim was marital property, and, if so, whether Maurice was entitled to any portion of the equity in the house; (2) whether either party should be required to pay the attorney’s fees incurred by the other; and (3) whether Kim was entitled to a judgment against Maurice for the $3,893.55 she loaned him.
¶ 7. The chancellor ruled that Kim should be awarded exclusive ownership, use, and possession of the house and Maurice was not entitled to any equitable interest in the house; that Kim be awarded a $3,893.55 judgment against Maurice for loans that she made to him; and that Maurice was required to pay $1,500 towards Kim’s attorney’s fees. From the chancellor’s adverse ruling, Maurice appeals.
STANDARD OF REVIEW
¶ 8. In domestic relations matters, “[we] will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997) (quoting Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994)). “On appeal, [we] are required to respect the findings of fact by the chancellor [which are] supported by credible evidence and not manifestly wrong.” Id.
ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Division of Marital Property

¶ 9. Maurice’s first two assignments of error concern the manner in which the chancellor divided the marital property; therefore, we combine these is *1127 sues and address them together. We must note that Maurice’s brief does not specifically address the chancellor’s failure to make findings of fact and conclusions of law on the record. Rather, Maurice argues that the chancellor erred in not granting him any marital property and that the chancellor failed to consider the correct legal standard in determining if the house was a marital asset. We acknowledge the fact that the chancellor failed to include any specific findings of fact or conclusions of law to support his decision on these issues. However, we find that this error by the chancellor does not rise to the level which requires us to reverse and remand the case.
¶ 10. In Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994), the Mississippi Supreme Court defined marital property “as being any and all property acquired or accumulated during the marriage.” By this definition, the marital domicile was not marital property because it was not acquired during the marriage. If the marital domicile was not marital property, there was no requirement that it be equitably divided in accordance with the guidelines in Ferguson v. Ferguson, 689 So.2d 921 (Miss.1994). As we have already noted, Kim acquired the home prior to the marriage and, from her separate bank account, made all of the mortgage payments on the home during the course of the marriage.
¶ 11. Because the chancellor failed to provide us with an explanation of his analysis of the evidence and the basis for his decision, we do not know if he refused to award Maurice an interest in the marital domicile because he determined that the home was not marital property or because he determined that Maurice failed to make a contribution to the maintenance and renovation of the home after it became the parties’ marital domicle. Nevertheless, we find that it would be a waste of judicial resources to reverse and remand for findings of fact because, as discussed below, we see no arguable basis on which the chancellor could have ruled otherwise.
¶ 12. We make clear, however, from the outset that we are not saying that the failure of a chancellor to make findings of fact and conclusions of law when dividing assets subject to dispute regarding their marital status will never warrant reversing and remanding for findings. However, it is clear from the record in this case that the only asset which is claimed to be have been a marital asset was the marital domicile which was acquired by Kim prior to the parties’ marriage. It is also clear that Maurice cannot claim that he made a material contribution towards the acquisition of the marital home. Consequently, the only way that Maurice can claim an equitable interest in the marital home is by showing that he made substantial contributions to the maintenance, upkeep, and more specifically, the renovations of the home during the course of the marriage.
¶ 13. Both side presented conflicting testimony as to who paid what in regards to household expenses and renovations to the house. There is no question that the chancellor was in the best position to judge the credibility of the parties’ testimony, and, based on his ruling, it is obvious that he found Kim’s testimony more credible. Nevertheless, the chancellor still allowed both parties to submit documentation to substantiate their respective contentions. As already noted, Kim submitted substantial and credible documentation to support her claim that she paid, from her separate bank account, all of the mortgage payments during the course of the marriage; the bulk of the household expenses; and the vast majority of the renovation expenses. Maurice failed to produce documentation to substantiate his claim that he contributed to the household expenses and *1128 furnishings and that he paid around $14,000 of the renovation expenses. We acknowledge that Maurice produced an exhibit, containing certain invoices and estimates from various contractors, as support for his claim. However, the exhibit is not proof that Maurice actually paid the estimated costs of the various contractors. Further, though the exhibit contains some invoices which appear to have been paid by Maurice, there is no way to ascertain that the items were purchased for the purpose of renovating the marital home. Therefore, Maurice clearly failed to prove that he made sufficient contributions to the marital home that would entitle him to an equitable interest in the home. In light of the evidence presented, the chancellor could only find that the marital home should be awarded to Kim and that Maurice was not entitled to any equitable interest in it.

(2) Loans

¶ 14. Maurice contends that the chancellor was manifestly in error for requiring him to repay money to Kim that she loaned him during the marriage. We are cognizant of the fact that chancellors are not usually asked to rule on such matters, but this was one of the issues that the parties decided to allow the chancellor to resolve. As we have already note, in order to facilitate his decision, the chancellor allowed both parties to submit documentation to support their respective contentions. Kim supported her claim with cancelled checks for the various amounts she loaned to Maurice. We also note that Maurice never denied that Kim loaned him the money. He simply contends that he repaid all that was loaned to him. However, the record is void of any documentary evidence to support Maurice’s contention that he repaid the money.
¶ 15. Therefore, in light of the evidence presented, it was only logical for the chancellor to conclude that Maurice did not repay Kim the money she loaned him. Accordingly, we find no error in the chancellor’s decision.

(3) Attorney’s Fees

¶ 16. “An award of attorney’s fees in a divorce case is a matter entrusted to the sound discretion of the chancellor; absent an abuse of discretion, the chancellor’s decision will generally be upheld.” Armstrong v. Armstrong, 618 So.2d 1278, 1282 (Miss.1993) (citing Martin v. Martin, 566 So.2d 704, 707 (Miss.1990)). “[I]t is the function of the chancellor to weigh all of the facts and assess the circumstances and to award fees accordingly.” Gray v. Gray, 909 So.2d 108, 113(¶ 23) (Miss.Ct.App.2005) (citing O’Neill v. O’Neill, 501 So.2d 1117, 1119 (Miss.1987)). “The party seeking attorney’s fees is charged with the burden of proving inability to pay; usually where the party is able to pay his or her own attorney’s fees, an award of such fees is inappropriate.” Riley v. Riley, 846 So.2d 282, 287-88(¶ 23) (Miss.Ct.App.2003) (citing Jones v. Starr, 586 So.2d 788, 792 (Miss.1991)).
¶ 17. Maurice asks that we find the chancellor in error for awarding Kim attorney’s fees in the amount of $1,500. We decline to do so because we find that the evidence supports the chancellor’s finding that Kim is unable to pay her attorney’s fees. Kim testified that she had to borrow $500 from a finance company in order to pay her attorney’s retainer fee. She further testified that she had incurred about $2,000 more in attorney’s fees due to the fact that the matter went to trial. Kim provided sufficient evidence which showed that, after she pays her monthly bills and other expenses for herself and her minor child, she has only $20 to $30 remaining. *1129 Accordingly, we find that the chancellor’s decision was reasonable and was within his discretion. Therefore, we affirm.
¶ 18. THE JUDGMENT OF THE ADAMS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.